J-A05044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA  GARNER | : | |
| | : | No. 1637 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence May 5, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002730-2015

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 14, 2018**

Appellant, Joshua Garner, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County, after he pleaded guilty to charges of Robbery, Aggravated Assault, and Possessing an Instrument of Crime.  Sentenced to an aggregate sentence of nine and one-half to 25 years' incarceration, Appellant challenges both the legality and discretionary aspects of his sentence.  We affirm.

The trial court sets forth the facts and procedural history of the case as follows:

> The underlying undisputed facts stem from a violent attack that occurred on March 2, 2015, upon Mr. Bruce Kates inside the "We Buy Gold" store, located [in] . . . Northeast Philadelphia.  On that date, at about 10:30 a.m., Mr. Kates was operating his business as usual when Appellant entered the store as a returning customer, inquiring about the sale status of a previously pawned "Aztec" ring.  Appellant previously successfully pawned multiple

_____

*   Former Justice specially assigned to the Superior Court.

jewelry items that he had taken from family members to support his drug habit. After briefly speaking, Appellant exited the store stating that he would return later.

Appellant returned to the store roughly 45 minutes later, sat down at a desk across from Mr. Kates and struck up a conversation during which Appellant inexplicably erupted and pulled out a B.B. pistol, pointed it at Mr. Kates' head and threatened him. A violent struggle ensued during which Mr. Kates successfully wrestled the pistol away from Appellant. Appellant reacted with further violence and produced a four-inch blade-folding knife and stabbed Mr. Kates multiple times slicing him in the face, head, neck and back. . . . Mr. Kates survived this vicious assault by fighting with Appellant. He received emergency treatment at the Aria Hospital, Torresdale Division, including numerous stitches for stab wounds to the left side of his face below his ear, under his face on the right side, under his neck area, and at least two more in his back.

During the course of the attack, Appellant removed roughly between $600.00 and $800.00 from Mr. Kates' office desk. Mr. Kates unequivocally identified Appellant as the perpetrator[, whom he clearly knew well.] Appellant was later arrested at his home . . . five hours after the assault.

. . .

Appellant was charged with [18 Pa.C.S.A. § 901(A), Criminal Attempt-Murder] graded as a Felony of the First Degree; [18 Pa.C.S.A. § 3701(A)(1)(ii)], Robbery, graded as a Felony of the First Degree; [18 Pa.C.S.A. § 2702(A)], Aggravated Assault, graded as a Felony of the First Degree; [18 Pa.C.S.A. § 907(A)], Possessing an Instrument of Crime, graded as a Misdemeanor of the First Degree; [18 Pa.C.S.A. § 2701(A)], Simple Assault, graded as a Misdemeanor of the Second Degree; and [18 Pa.C.S.A. 2705], Recklessly Endangering Another Person, graded as a Misdemeanor of the Second Degree. Following arraignment and [a] preliminary hearing, the case was eventually scheduled for a jury trial.

On February 1, 2016, which was the scheduled date of the jury trial, Appellant [decided to] tender[] a guilty plea to [the trial judge], the Honorable Anne Marie B. Coyle, to the charges of Robbery (F1), Aggravated Assault (F1), and Possessing [an] Instrument of Crime (M1). Pursuant to negotiations, all other

offenses, including the most serious offense of Attempted Murder were marked "Nolle Prosequi" or withdrawn by the Commonwealth's representative, Assistant District Attorney Erica Rebstock.

Following . . . [an] oral and written colloquy of Appellant, [the trial court] accepted the entry of the guilty pleas as proffered intelligently, knowingly, and voluntarily. [The trial court] then . . . directed the completion of Presentence Investigative Reports and Mental Health Assessments and deferred the sentencing hearing until April 8, 2016. Appellant's bail remained the same as within pre-trial status. On April 8, 2016, the sentencing was further continued to April 15, 2016, due to defense counsel's unavailability.

. . .

[On April 15, 2016,] evidence from recorded prison calls were introduced establishing that after being placed in custody, Appellant bragged that he intended to pretend to be mentally infirm to avoid prosecution for this assault. In addition, the Commonwealth introduced a video recording previously made by Appellant using his cellular telephone when he was in his bathroom at his home that he had proudly posted on the internet via You Tube. Appellant used the camera in his phone to voice his multiple intentional homicidal ideations before the attack upon Mr. Kates.

. . .

[A]fter the . . . evidentiary hearing and review of all sentencing factors and data submitted, including the Presentence Investigative Reports and the Mental Health Assessments, [the trial court] formally sentenced Appellant as follows:

> [Aggravated Assault - State term of confinement for a minimum period of seven years six months to a maximum period of twenty years to run concurrently to the sentence imposed for Robbery;
>
> Robbery - State term of confinement for a minimum period of seven years six months to a maximum period of twenty years; and

Possession of Instrument of Crime - State term of confinement for a minimum period of two years to a maximum period of five years to run consecutively to the sentence imposed for Robbery.]

Thus, the aggregate sentence imposed totaled a state term of confinement for a minimum period of nine and one-half to twenty-five years. The [statutory] maximum sentence that [the trial court] could have imposed . . . was a minimum period of confinement of twenty-two and one-half years to the maximum period of forty-five years.

As part of the Sentencing Order, Appellant was ordered to be fully evaluated and treated for any mental health and addictive conditions once classified within the State Correctional Institution. [The trial court] recommended that Appellant's sentence be served at State Correctional Institution Waymart in an effort to properly address Appellant's [history of mental illness and drug addiction]. Additional conditions were imposed to reduce the risk of Appellant's predicted recidivism. These requirements included Appellant's compliance with recommended mental health and drug and alcohol treatment and the taking of prescribed medication. State parole authorities were directed to conduct random drug and alcohol testing and perform random visits upon Appellant's future residence during the parole period.

[The trial court] ordered that Appellant be paroled, when eligible, to a mental health facility consistent with recommended treatment in lieu of residence with his parents. This condition was fashioned due to [the trial court's] stated concerns for the future safety of the Appellant's parents gleaned from testimony presented during sentencing hearings and concerns raised within the evaluative investigative reports. [The trial court also noted its concerns caused by] Appellant's premeditative homicidal intentions evidence within Appellant's self-video recording taken in his bathroom shortly before [he] attacked Mr. [Kates]. As a result, as part of the sentence, Appellant was ordered to have no contact [with Mr. Kates] or with his place of business while under [the trial court's] supervision.

. . .

On April 22, 2016, a Motion for Reconsideration of Sentence was filed by Attorney Brian Fishman, Esquire, on behalf of Appellant.

- 4 -

After an additional hearing conducted on May 5, 2016, the trial court entered an Amended Sentencing Order [imposing new sentences of five and one-half to 15 years for Robbery, four to 10 years for Aggravated Assault, to run consecutive to Robbery, and six months to five years for PIC, to run concurrently to Robbery]. In essence, the aggregate sentence, although restructured, remained an imposed minimum period of confinement of nine and one-half to 25 years within the State Correctional Institution.

[Appellant timely filed a counseled] Notice of Appeal . . . on May 19, 2016. [The trial court issued an] Order pursuant to Pa.R.A.P. 1925(b) on May 25, 2016. Counsel for Appellant filed a Statement of Matters Complained of on Appeal [asserting] that [the trial court] erred when imposing [an allegedly excessive and manifestly unreasonable aggregate sentence].

Trial Court Opinion, 2/7/17 at 1-6.

In his brief, Appellant presents the following question for our consideration:

**DID THE TRIAL COURT ABUSE ITS DISCRETION IN IMPOSING AN EXCESSIVE AND MANIFESTLY UNREASONABLE AGGREGATE SENTENCE OF NINE AND ONE-HALF (9½) TO TWENTY-FIVE (25) YEARS ON ROBBERY, AGGRAVATED ASSAULT AND POSSESSING AN INSTRUMENT OF CRIME, WHERE APPELLANT HAD A PRIOR RECORD SCORE OF ZERO, PLEAD[ED] GUILTY, EXPRESSED REMORSE, PROVIDED THE COURT WITH ABUNDANT MITIGATION IN A SENTENCING MEMORANDUM AND THE COURT FAILED TO CONDUCT AN INDIVIDUALIZED ASSESSMENT OF APPELLANT'S REHABILITATIVE NEEDS AND INSTEAD SENTENCED SOLELY BASED ON RETRIBUTION AND PUNISHMENT, FAILED TO PROVIDE REASONS ON THE RECORD JUSTIFYING ITS DECISION AND WHERE THE COURT MERELY REFASIONED [SIC] THE SAME PUNITIVE SENTENCE FOLLOWING THE FILING OF POST-SENTENCE MOTIONS TO FIT THE EXCESSIVE AND UNJUST SENTENCE WITHIN THE SENTENCING GUIDELINES AFTER THE COURT FAILED TO DO SO AT THE ORIGINAL SENTENCING HEARING?**

Appellant's brief at 14.[1]

Appellant raises several challenges to the discretionary aspects of his sentence. Our standard and scope of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by a reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014) (citation omitted). Before we reach the merits of Appellant's claim, we observe that there is no automatic right to appeal from the discretionary aspects of sentencing. *Id*. at 759. To invoke this Court's jurisdiction, we must first determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011) (citation and footnotes omitted). If the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case. *Antidormi*, 84 A.3d at 759.

---

[1] Appellant's question presented is virtually identical to his Pa.R.A.P. 1925(b) concise statement filed with the trial court.

In Appellant's Pa.R.A.P. 2119(f) statement, he first contends the trial court misapplied the sentencing guidelines for the robbery offense by using an Offense Gravity Score ("OGS") of 12 instead of 10 in its calculations. ***See*** 204 Pa.Code § 303.15 (F1 Robbery at 18 Pa.C.S. § 3701(a)(1)(ii) carries OGS of 10). The court imposed a 66-month sentence for the robbery, which would have represented a low-end standard range sentence for a robbery with an OGS of 12, but, as it was, represented an aggravated range sentence for Appellant's robbery offense that carried an OGS of 10. Had the court correctly applied an OGS of 10 within the enhanced matrix, ***see*** 204 Pa.Code § 303.18, *infra,* it is reasonable to conclude the court would have imposed a low-end standard range sentence of 40 months, Appellant contends.

Compounding this problem, Appellant maintains in his Rule 2119(f) statement, is that the court also applied the Deadly Weapon Enhancement/Used ("DWE/Used") Matrix[2] at 204 Pa.Code § 303.18 instead of

---

[2] The Sentencing Guidelines explains the "use" deadly weapon enhancement as follows:

**(a) Deadly Weapon Enhancement.**

. . .

(2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.18). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:

the Basic Sentencing Matrix at 204 Pa.Code § 303.16, as it erroneously found the knife he used on the victim was a deadly weapon. As the trial court clearly intended to sentence Appellant in the low-end standard guideline range, Appellant posits, this panel should grant remand to permit the court to impose the proper low-end standard range sentence within the proper matrix, which is the Basic Sentencing Matrix.

Challenges to the trial court's application of the sentencing guidelines address the discretionary aspects of Appellant's sentence. **See Commonwealth v. Krum**, 533 A.2d 134, 135 (Pa. Super. 1987) (*en banc*). **See also Commonwealth v. Kneller**, 999 A.2d 608, 613 (Pa. Super.2010) (*en banc*) ("a challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing."); **Commonwealth v. Lamonda**, 52 A.3d 365, 371 (Pa. Super. 2012) (explaining that a sentencing court's application of an allegedly incorrect Offense Gravity Score challenges the discretionary aspects of sentencing).

As noted above, "[i]ssues challenging the discretionary aspects of sentence must be raised in a post-sentence motion or by presenting the claim

---

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa.Code § 303.10(a)(2).

to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. McAfee***, 849 A.2d 270, 275 (Pa. Super. 2004 (citations and internal quotations marks omitted).

Here, Appellant waived his claim that the court used the wrong OGS in calculating his sentence, as he failed to raise it with the trial court at either of his sentencing hearings or in his motion for reconsideration of sentence. Indeed, in both the first sentencing hearing and Appellant's motion for reconsideration, he agreed with the court that his robbery offense carried an OGS of 12 and his aggravated assault offense carried an OGS of 11. ***See*** Sentencing Hearing, 4/5/16 at 5-9; ***see also*** Appellant's Motion to Vacate and Reconsider Sentence, 4/22/16, at 3. Moreover, at Appellant's second sentencing hearing of May 15, 2016, counsel stated in his argument for a standard range sentence that for "robbery, which is the lead offense, the top of the standard range is seven years [(84 months),]" which corresponds with the DWE/Used Matrix where a prior record of zero and an OGS of 12 applies. N.T., 5/15/16, at 8. Appellant also failed to object to the OGS at any other time during the hearing, even when the court and Commonwealth likewise identified the standard range sentence for his robbery offense as 66 to 84 months. N.T., 5/15/16 at 14. Finally, Appellant filed no motion for reconsideration of sentence after the court imposed his new sentence. Accordingly, his OGS-based challenge is waived.

With respect to Appellant's challenge against the court's use of the DWE/Used Matrix, it survives our threshold inquiries, as he raised this objection in both his post-sentence motion and Pa.R.A.P. 1925(b) concise statement, and because it presents a substantial question as to sentencing discretion. ***See Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1266 (Pa. Super. 2014) (claim that trial court wrongfully applied deadly weapon enhancement raises substantial question). Nevertheless, we find the issue lacks merit.

Specifically, there is no dispute that Appellant attacked Mr. Kates with a knife in the course of committing the robbery, stabbing him multiple times in the face, neck and back with the four-inch blade before Mr. Kates managed to dispatch Appellant from the store. Such facts established that Appellant used a knife in such a manner to cause potentially serious bodily injury or even death. Therefore, no abuse of discretion attended the court's application of the DWE/Used Matrix in imposing sentence for the offense of robbery. ***See Commonwealth v. Chapman***, 528 A.2d 990, 992 (Pa.Super. 1987) (finding razor blade held to victim's face during robbery had sufficient potential to cause harm to justify application of deadly weapon enhancement).

The next discretionary aspects challenge Appellant asserts in his Pa.R.A.P. 2119(f) statement is that the trial court ignored significant mitigating circumstances, including his pleading guilty, accepting responsibility for his crime, and expressing remorse. In this regard, he asserts more fully that he "was afforded no consideration for his tortured

history of mental health and substance abuse problems, his past educational and employment background, his community support, the fact that he [pleaded] guilty and took responsibility for his actions, and showed remorse for his crimes by apologizing to the complainant and his family." Appellant's Rule 2119(f) statement, at 13.

This challenge has as its corollary the claim that the trial court therefore failed to conduct an individualized assessment of Appellant, as the court chose, instead, to impose a purely punitive sentence without consideration of his mitigating circumstances or his rehabilitative needs. As Appellant has preserved this claim by raising it with the trial court at his second sentencing hearing and incorporating it in his Rule 1925(b) statement, we consider whether this claim raises a substantial question.

> An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question. ***Commonwealth v. McNabb***, 819 A.2d 54, 57 (Pa. Super. 2003). ***Accord Commonwealth v. Wellor***, 731 A.2d 152, 155 (Pa. Super. 1999) (reiterating allegation that sentencing court "failed to consider" or "did not adequately consider" certain factors generally does not raise substantial question). ***Compare Commonwealth v. Felmlee***, 828 A.2d 1105, 1107 (Pa. Super. 2003) (*en banc*) (stating substantial question is raised, however, where appellant alleges sentencing court imposed sentence in aggravated range without adequately considering mitigating circumstances).

> When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied,* 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied,* 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his

potential for rehabilitation." *Id.* Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). *See also Commonwealth v. Tirado*, 870 A.2d 362, 368 (Pa. Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Cruz-Centeno*, [ ] 668 A.2d 536 ([Pa. Super.] 1995), *appeal denied,* 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable). Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the "minimum possible" confinement. *Walls*, *supra* at 570, 926 A.2d at 965. Under 42 Pa.C.S.A. § 9721, the court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa.Super. 2006). The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. *Id.* (holding challenge to court's imposition of sentence of six (6) to twenty-three (23) months imprisonment and sentence of one (1) year probation running consecutive, did not present substantial question). *Compare Dodge II*, *supra* (holding imposition of consecutive sentences totaling 58 ½ to 124 years imprisonment for thirty-seven (37) counts of theft-related offenses presented a substantial question because total sentence was essentially life sentence for forty-two year-old defendant who committed non-violent offenses with limited financial impact).

*Commonwealth v. Moury*, 992 A.2d 162, 171–72 (Pa. Super. 2010).

In the instant case, Appellant's four-year minimum sentence for Aggravated Assault[3] was in the mitigated guideline range while his five and one-half year minimum sentence for robbery was in the aggravated guideline range.[4] To the extent Appellant claims the court improperly imposed his aggravated assault sentence without considering his mitigating circumstances, he fails to raise a substantial question warranting merits review. *See McNabb*, *supra*; *Moury*, *supra* (recognizing precedent that where trial court had benefit of presentence investigation report, imposition of standard range sentence, absent more, cannot be considered excessive or

---

[3] Initially, we note that neither the charging information nor any other part of the record specifies a numerical subsection to the charge of Aggravated Assault at 18 Pa.C.S. § 2702(a). Because the offense is identified specifically as an "F1" offense, however, the only subsection that reasonably applies to the facts of the case is subsection (a)(1). Moreover, the Commonwealth indicated at the outset of the guilty plea hearing that it was an F1 Aggravated Assault "causing serious bodily injury" rather than "attempts to cause serious bodily injury" to which Appellant was pleading guilty. Appellant thereafter confirmed his understanding that he was pleading guilty to aggravated assault, causing serious bodily injury, which corresponds only with subsection (a)(1). N.T., 2/1/16, at 5, 12.

[4] Aggravated Assault (causes serious bodily injury) at 18 Pa.C.S. § 2702(a)(1) carries an offense gravity score of 11. *See* 204 Pa.Code § 303.15. Under the DWE/Used Matrix at 204 Pa.Code § 303.18, an OGS of 11 coupled with a prior record score of zero results in a standard range minimum sentence of 54 to 72 months, plus or minus 12.

Robbery (threatens another with or intentionally puts him in fear of immediate serious bodily injury) at 18 Pa.C.S. § 3701(a)(1)(ii), carries an offense gravity score of 10. *See* 204 Pa.Code § 303.15. Under the DWE/Used Matrix at 204 Pa.Code § 303.18, an OGS of 10 coupled with a prior record score of zero results in a standard range minimum sentence of 40 to 54 months, plus or minus 12 months.

- 13 -

unreasonable). A substantial question is raised, however, by Appellant's related claim that the trial court failed to consider his rehabilitative needs in fashioning his aggravated assault sentence. *See Commonwealth v. Downing*, 990 A.2d 788, 793 (Pa. Super. 2010).

As for his claim that the court imposed his aggravated range robbery sentence without consideration of individualized circumstances, mitigating factors, or rehabilitative needs, this Court has previously held such a claim presents a substantial question warranting merits review. *See Felmlee*, *supra*; *Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (addressing merits where appellant alleges sentencing court erred by imposing aggravated range sentence without consideration of mitigating circumstances); *Commonwealth v. Booze*, 953 A.2d 1263, 1278 (Pa. Super. 2008) (noting claim that sentencing court failed to state adequate reasons on record for imposing aggravated-range sentence raises substantial question).

Though Appellant's statement is adequate to raise a substantial question for our review, he must still show his sentences were inconsistent with the gravity of the offense, the protection of the public, or Appellant's rehabilitative needs. With respect to the last sentencing consideration, Appellant argues that the court altogether disregarded Appellant's rehabilitative needs.

The record belies Appellant's claim. At the sentencing hearing of May 5, 2016, the court's observations, stated on the record, reflected a

consideration of Appellant's individual circumstances,[5] both aggravating and

mitigating, and his rehabilitative needs before it imposed sentence:

> **THE COURT:** Well, number one, had the defendant not entered a plea of guilt and been found guilty before a jury, I can guarantee you that the sentence that would have been imposed by this court would have been commensurate with that and would possibly have been doubled, at the very least. So to say that I did not take into account the mitigating circumstance of an entry of a plea is a misnomer. To say that I did not take into account his individual situation is so off the grid, I find it offensive, because I took great pains to evaluate all aspects of this defendant.
>
> Unfortunately, --and I did not create this difficulty – at this point in time I have a defendant who is potentially deadly to the persons that care about him the most. I listened very carefully. And you [Mother] keep shaking your head and I understand you love your son. I get that. . . .But, ma'am, you're the same person who told this court and revised history with respect to the time period when you could have pursued a matter within the court's supervision, and you discounted the danger that your son posed to you. And you told this court when I asked you why did you drop the assault charge, you gave this court a rendition of facts that indicated to this court that your love for your son sometimes blinds your ability to deal with difficulties.
>
> The difficulties are so great. He stopped using his medicine. He becomes an immediate danger. Everyone here knows full well and has tried time and time and time again to help him. It hasn't worked. He acknowledged himself that when he's not taking his medicine all bets are off. I don't know whether the use of PCP preceded the mental health difficulties or was commensurate with that. I don't know that. I can only glean from the information that's been given to me. . . .But I fashioned within my sentence the court's attempt to do just what you asked me to do, which is [to] help him become someone who is not a danger.

---

[5] At the first sentencing hearing of April 15, 2016, the court acknowledged having the benefit of the PSI report and mental health assessments. N.T. 4/15/16 at 4.

- 15 -

The person that I saw – have a seat. The person that I saw – just give me, let me go through it here with you. All right? I know this is hard. I know this is heart-breaking. The person I saw on [Appellant's self-video in which he describes his plan to attack Mr. Kates] sent chills down my spine. As I watched the video, I watched your son and his lack of how he responded to the video was telling to me.

I have to bear into account the protection of the public and the likelihood for recidivism with respect to his sentence, because the person or persons that are possibly at risk include you [Mother], his brother, his father, because by all accounts there was a good relationship between the victim and the defendant preceding this.

The person who I saw on the video exhibited all kinds of mental difficulties, homicidal ideations, the likes of which the only thing that I can compare it to is the same ideations that one sees in folks in Columbine and similar circumstances. I can't help that. The only person that can help that is the defendant by doing his best to follow the recommended treatment, which he did not.

I also bear in mind the defendant's statements to his girlfriend, who was also listed as a prior victim on one of the cases who withdrew the matter, wherein he identified his intent to use the mental health difficulties as a way to get away with what horrific act he did.

I balanced all of that with the fact that he did accept responsibility for his actions. And as he sits here before me today and that day, I do believe that he is remorseful. I'm quite sure he wishes he could turn back time, but you can't.

. . .

The only reason that I did not go as far as part of my brain is thinking maybe I should have is that he did accept responsibility, and I do have within the back part of this sentence supervision through the state parole board with specific conditions of compliance with mental health and drug and alcohol components and recommended and ordered that when he is released, that he is not to go home. He is to go, first and foremost, into a facility that will help him step down the process to going back into the civilian population.

- 16 -

The reason for the court's recommendation of the sentence to be served at SCI Waymart was because as an individual that I considered, I considered his need for what I believed to be the best place that has mental health treatment and counseling and [the] best supervision to the point where one does not have to worry about where he is and what he's doing at what particular point in time.

5/5/16 at 14-19.

On balance of all mitigating and aggravating considerations addressed above, the court determined that a nine and one-half to 15 year aggregate sentence comprising guideline sentences was fair and reasonable, and we discern no abuse of discretion in that conclusion. We note, further, that the imposition of consecutive sentences for the crimes of violence at issue, which Appellant also assails, does not amount to a virtual life sentence, as Appellant will be eligible for parole at age 34.[6]

Finally, Appellant raises a challenge to the legality of his sentence where he posits that his robbery and aggravated assault offenses merged for

---

[6] To the extent Appellant's discretionary aspects argument focuses on the imposition of consecutive sentences, we refer to our well-settled jurisprudence, *cited* supra, that a sentencing court has discretion to impose consecutive sentences, 42 Pa.C.S.A. § 9721, and that the imposition of consecutive sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Lamonda*, 52 A.3d at 372.

Here, the imposition of an aggregate sentence of nine and one-half to 15 years is not manifestly excessive given the violent nature of Appellant's crime, which included pointing a bb handgun in the store owner's face before cutting and stabbing him in the face, neck, and back multiple times with a knife in furtherance of a robbery. Therefore, we deny that Appellant's challenge to his consecutive sentences raised a substantial question.

purposes of sentencing. Contrary to Appellant's position, the crimes do not merge.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law." **Commonwealth v. One**, 88 A.3d 983, 1020 (Pa. Super. 2014). Accordingly, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Brougher**, 978 A.2d 373, 377 (Pa. Super. 2009).

The Sentencing Code provides as follows:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. "Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." **Commonwealth v. Raven**, 97 A.3d 1244, 1249 (Pa. Super. 2014).

While the crimes in the instant case arise from the same criminal episode, the statutory elements of Appellant's robbery and aggravated assault convictions are plainly different, as each crime requires proof of one element that the other does not. Specifically, Appellant pled guilty to first-degree felony aggravated assault at 18 Pa.C.S.A. § 2702(a)(1), one element of which—causing serious bodily injury--is not an element to robbery at 18 Pa.C.S.A. § 3701(a)(1)(ii). Appellant's robbery offense, in turn, contains the

element of theft, which aggravated assault does not. **See**, **e.g.**, **Commonwealth v. Walls**, 950 A.2d 1028, 1030-32 (Pa. Super. 2008) (holding sentences for robbery at Section 3701(a)(1)(ii) and aggravate assault at Section 2702(a)(1) arising from same facts do not merge because each requires proof of an element which the other does not); **see also Commonwealth v. Payne**, 868 A.2d 1257, 1263 (Pa. Super. 2005) (Concluding crimes of aggravated assault and robbery "do not merge, for robbery requires proof of theft, which aggravated assault does not, and aggravated assault as a felony of the first degree requires proof of circumstances manifesting extreme indifference to the value of human life, which robbery does not."). This claim fails.

Judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/18